IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JULIUS HOBBS,

       Plaintiff,

vs.                           CASE NO. 4:17-cv-00422-RH-CAS

FLORIDA SUPREME COURT et al.,

       Defendants.
_____/

## MOTION TO DISMISS PLAINTIFF'S COMPLAINT BY DEFENDANTS FLORIDA BOARD OF BAR EXAMINERS AND MICHELE A. GAVAGNI (AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT)

Defendant Florida Board of Bar Examiners ("Board") and Michele A. Gavagni ("Gavagni") move to dismiss the complaint of Julius Hobbs ("Hobbs" or "Plaintiff"), pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P., and state in support as follows:

## INTRODUCTION

Hobbs is a second-year law student who filed, and later withdrew, an application for admission to The Florida Bar. Hobbs sues the Florida Supreme Court, the Board, and Gavagni, in her official capacity as Executive Director of the Board. Hobbs asserts claims under Title II of the Americans with Disabilities Act, 42 U.S.C. §12132 ("ADA"), and §504 of the Rehabilitation Act, 29 U.S.C. §701.

Hobbs challenges two questions on the Florida Bar Application, and he also challenges the Board's follow-up inquiries made in response to his disclosure of two DUI arrests and his diagnosis of Alcohol Use Disorder. The gravamen of Hobbs's complaint is that because Hobbs believes his alcohol consumption is under control and his former treating physician wrote a letter in support of his admission, the Board should not be permitted to make any further inquiry regarding the matter as part of its character and fitness determination. Hobbs requests this Court to enjoin the Board from making any further inquiry, and he also seeks an award of damages.

## MEMORANDUM OF LAW

Plaintiff's complaint should be dismissed based on (i) lack of standing, ripeness and/or mootness, (ii) Eleventh Amendment immunity and (iii) Plaintiff's failure to state a claim for relief under the ADA, as a matter of law, based on the allegations of the complaint.

### I.  The Florida Bar Admission Process

Because Plaintiff's claims arise out of the Board's character and fitness investigation during the processing of his bar application, it is necessary to consider his claims in the context of the overall bar admission process. The bar admission process and essential eligibility requirements for admission to The Florida Bar are set forth in the Rules of the Supreme Court Relating to Admissions to the Bar ("Bar Admission Rules"). The Bar Admission Rules are reviewed, approved, and

promulgated by the Supreme Court of Florida. Fla. Bar. Admiss. R. 1-12.

Under the Bar Admission Rules, law students may register with the Board by filing a Registrant Bar Application. Fla. Bar Admiss. R. 2-21.2. Upon filing of the Registrant Bar Application, the Board initiates a character and fitness investigation. Fla. Bar Admiss. R. 2-22. Law student applicants must later file a "Supplement to Registrant Bar Application," to convert the Registrant Bar Application into a "Bar Application," and the Board updates the character and fitness investigation at that time. Fla. Bar Admiss. R. 2-21.2 and 2-22.

An applicant who passes the bar examination "is entitled to admission to the Bar if and only if he meets the state's 'character and fitness' requirements." *Lawrence v. Schwiep*, 2005 WL 2491564, *1 (N.D. Fla. 2005), *aff'd,* 196 F. App'x 858 (11th Cir. 2006). The purpose of the character and fitness screening before admission to The Florida Bar "is to protect the public and safeguard the judicial system." *Id.* (citing Fla. Bar Admiss. R. 1–14.1). The Board, "an arm of the Florida Supreme Court, reviews an applicant's background, may conduct an informal hearing (see Fla. Bar Admiss. R. 3–22), and determines either that the applicant has met the character and fitness requirements or that 'specifications' should be filed 'charging the applicant or registrant with matters which if proven would preclude a favorable finding by the Board.'" *Id.* (citing Fla. Bar Admiss. R. 3–22.5). "An applicant who contests the specifications is entitled to a formal evidentiary hearing."

*Id.* (citing Fla. Bar Admiss. R. 3–23.2).

If a formal hearing is held, "the Board again determines, now based on the evidence presented at the hearing, whether the applicant has established his or her character and fitness to practice law." *Lawrence*, 2005 WL 2491564 at *1. "If the Board concludes that the applicant has not established his or her character and fitness, the Board must enter findings of fact and conclusions of law." *Id.* (citing Fla. Bar Admiss. R. 3–23.7). "An unsuccessful applicant has a right of review by the Florida Supreme Court, which may independently review the record, *see Florida Bd. of Bar Examiners Re: L.K.D.*, 397 So.2d 673 (Fla. 1981), and address all challenges to the Board's determination, including those based on the United States Constitution" and the Americans with Disabilities Act. *Id.*; *Dale v. Moore*, 121 F.3d 624 (11th Cir. 1997) (holding that applicant for admission had opportunity to raise ADA claim as part of proceeding on application for admission to The Florida Bar). "Absent review by the Florida Supreme Court, the findings of the Board become final." *Lawrence*, 2005 WL 2491564 at *1 (citing Fla. Bar Admiss. R. 3–23.7).

It is the applicant's responsibility to demonstrate that he satisfies the character and fitness requirements. Fla. Bar. Admiss. R. 2-12. The Bar Admission Rules set forth, with specificity, the "essential eligibility requirements" that must be satisfied:

> (a) knowledge of the fundamental principles of law and their application;
> (b) ability to reason logically and accurately analyze legal problems; and,

(c) ability to and the likelihood that, in the practice of law, one will:
> (1) comply with deadlines;
> (2) communicate candidly and civilly with clients, attorneys, courts, and others;
> (3) conduct financial dealings in a responsible, honest, and trustworthy manner;
> (4) avoid acts that exhibit disregard for the rights, safety, or welfare of others,
> (5) avoid acts that are illegal, dishonest, fraudulent, or deceitful; and,
> (6) comply with the requirements of applicable state, local, and federal laws, rules, and regulations; any applicable order of a court or tribunal; and the Rules of Professional Conduct.

Fla. Bar Admiss. R. 3-10.1.

Bar Admission Rule 3-11 states that "[a] record manifesting a lack of honesty, trustworthiness, diligence, or reliability may constitute a basis for denial of admission."   This rule also identifies certain information that, if discovered (though not disqualifying in itself) may be cause for further inquiry to assess whether the applicant meets the essential eligibility requirements, including: unlawful conduct, academic misconduct, acts involving dishonesty, financial irresponsibility, neglect of professional obligations, "evidence of mental or emotional instability" and "evidence of drug or alcohol dependency." Fla. Bar Admiss. R. 3-11.[1]

The Bar admission application includes two questions (No. 25 and No. 26)

---

[1] In the complaint (ECF No. 1, p. 7, at ⁋ 33), Plaintiff mischaracterizes Bar Admission Rule 3-11, stating that the rule provides that "mental or emotional instability" or "evidence of drug or alcohol dependency" are "potentially disqualifying" attributes. What the rule actually states, however, is that the discovery of this information may result in "further inquiry" as part of the character and fitness determination – not that these attributes are, themselves, disqualifying.

which relate to substance use and mental health. (ECF No. 1-1, pp. 2-4). The preamble to these questions explains why these questions are necessary; assures applicants that a "Yes" answer is not automatically disqualifying; assures applicants that the Supreme Court, upon the Board's recommendation, regularly admits applicants with a history of both mental disorders and treatment by mental health professionals; and encourages applicants to seek mental health treatment when necessary. (ECF No. 1-1, pp. 2-3).

Questions No. 25 and No. 26 are narrowly drawn to only obtain information that is necessary for the Board's character and fitness determination. Question No. 25 is limited in scope and time-frame to information about certain "severe" mental health disorders and substance use disorders during the past five years:

> 25.    Within the past five years have you ever been diagnosed with, suffered from, or been treated for a mental illness involving a severe thought disorder (including, but not limited to, schizophrenia), a severe mood disorder (including, but not limited to major depressive or bipolar disorder) or substance abuse disorder (including, but not limited to, abuse of or addition to/dependence on alcohol, marijuana, cocaine, or prescription medications)?

(ECF No. 1-1, p. 3). If the applicant answers "Yes," the applicant is asked to provide information regarding the condition, and dates of treatment.

Question No. 26 is limited to current mental health conditions which do, or if untreated could, impair an applicant's ability to practice law in a competent and professional manner:

26.    Do you currently (as hereinafter defined) have a mental health condition (not reported above) which in any way impairs or limits, or if untreated could impair or limit, your ability to practice law in a competent and professional manner? If yes, are the limitations or impairments caused by your mental health condition reduced or ameliorated because you receive ongoing treatment (with or without medications) or participate in a monitoring or counseling program? If yes, describe such condition and any treatment or program of monitoring or counseling. "Currently" does not mean on the day of, or even in the weeks or months preceding the completion of the application; rather, it means recently enough so that the condition may have an ongoing impact on your functioning as a licensed attorney.

(ECF No. 1-1, p. 4).[2]

As part of the Board's character and fitness review process, the Board sometimes requires applicants to undergo a substance use disorder evaluation and/or a psychiatric evaluation. However, applicants are also given the option of appearing for an informal, investigative hearing (Fla. Bar Admiss. R. 3-22), in lieu of undergoing an evaluation, if they choose to do so. (ECF No. 1-6, p. 4).

Where an applicant's character and fitness investigation has not been completed within nine months, the applicant may file a Petition for Review with the Florida Supreme Court. *See* Fla. Bar Admiss. R. 3-40.2. In the petition, applicants are afforded an opportunity to seek review of a Board decision that an applicant submit to a psychiatric or substance use disorder evaluation as part of the Board's

_____

[2] The Board's substance use and mental health questions have been subject to periodic review, and have been substantially revised, over the years. *See Ellen S. v. Fla. Bd. Bar Exam'rs*, 859 F. Supp. 1489, 1491 n. 1 (S.D. Fla. 1994) (quoting mental health question used in 1994, which is substantially different from the current form of the question).

character and fitness investigation.

## II.   Plaintiff's Application for Admission

Hobbs filed a Registrant Bar Application with the Board in October of 2016 during the Fall semester of his first year of law school. (ECF No. 1, ¶¶27 & 44; ECF No. 1-2). Prior to beginning law school, Hobbs was in the army for ten years. While in the army, Hobbs was arrested twice for driving under the influence (DUI), first in 2006 and again in 2012. (ECF No. 1, ¶¶21-22). Moreover, in 2015, "as a result of acclimating to civilian life, the stress that was a result of his custody lawsuit and a recent romantic relationship that had unexpectedly terminated," Hobbs experienced a "severe depressive episode" and "used alcohol." (ECF No. 1, ¶25). Hobbs underwent five months of psychotherapy at a Veteran's Hospital in Tampa, from November of 2015 through April 5, 2016, concluding just 6 months before he filed his application for admission to The Florida Bar. (ECF No. 1, ¶26; ECF No. 1-4). He was diagnosed as having "Adjustment disorder with mixed anxiety and depressed mood" and "Alcohol Use Disorder, mild." (ECF No. 1-4).

On his bar application that he filed in October of 2016, Hobbs answered "Yes" to Question No. 25 and "No" to Question No. 26. In response to Question No. 25, Hobbs noted that he had been treated for "Drug or alcohol abuse" from March of 2015 to April of 2016. (ECF No. 1-1, p. 3). The Board requested, among other things, additional information and records relating to Hobbs's 2005 divorce proceeding, his

8

2006 DUI and Open Container arrest and his "sobriety date" and "current support system" relating to his Alcohol Use Disorder. (ECF No. 1-2 & 1-3).

Upon receipt of the additional information and records, the Board requested its expert consultant to review the matter, and make a recommendation to the Board. (ECF No. 1-6). The Board's consultant recommended that Hobbs undergo a Substance Use Disorder evaluation. The Board reviewed the consultant's recommendation and decided to require Hobbs to either appear for an investigative hearing or undergo a Substance Use Disorder evaluation as part of its character and fitness investigation. (ECF No. 1-6).

The basis for the consultant's recommendation and the Board's decision is set forth in the Notice of Board Action which was sent to Hobbs on May 17, 2017. (ECF No. 1-6). The Board's consultant noted that Hobbs maintained that his alcohol use was "under control and at a very manageable level," but also went on to explain why the Board should not rely on Hobbs's self-assessment:

> While not questioning the veracity of the applicant regarding his alcohol use, it is dangerous to rely on the patient for an objective assessment of the appropriateness of their substance use. Given that the applicant has had two DUI's 6 years apart and a recent Alcohol Use Disorder diagnosis suggests that the applicant has had a chronic problem with alcohol and may continue to experience similar problems in the future, especially since the applicant equates his alcohol abuse with emotional distress.

(*Id.*). The consultant also explained that Substance Use Disorders can affect the applicant's ability to meet the essential eligibility requirements for the practice of

law, including "cognitive function, judgment and meeting standards of professional behavior." Thus, the purpose of the Substance Use Disorder evaluation would be to focus on an assessment of the "essential eligibility requirements for the practice of law" as applied to Hobbs. (*Id.*).

Hobbs did not contact the Board about scheduling an investigative hearing or a Substance Use Disorder evaluation.[3] Instead, on August 14, 2017, Hobbs withdrew his application for admission, without prejudice. (ECF No. 1, ℙ72). On August 22, 2017, the Board notified Hobbs that his application was withdrawn without prejudice pursuant to Bar Admission Rule 3-15, and that the Board's "investigatory and adjudicatory functions have ceased." (Copies of Plaintiff's withdrawal and the Board's response are attached at Exhibit "B"). Although Hobbs alleges that he wishes to be a member of The Florida Bar, he does not allege when he will reapply, but merely alleges in conclusory fashion that he will "reapply … when he will no longer be subject to these discriminatory practices." (ECF No. 1, ℙ74).

### III.   <u>Legal Argument</u>

The Plaintiff's complaint should be dismissed based on (i) lack of standing, ripeness and/or mootness, (ii) Eleventh Amendment immunity and (iii) Plaintiff's

---

[3] Hobbs claims that his counsel requested reconsideration of the Board's decision, but never received a response from the Board. (ECF No. 1, ℙ70-71). The Board did respond. (A copy of the Board's response is attached as Exhibit "A").

failure to state a claim for relief, as a matter of law, based on the Plaintiff's allegations and the exhibits that Plaintiff has attached to his complaint.

## A. <u>Standing, Ripeness and Mootness</u>

All of Plaintiff's claims are subject to dismissal for lack of standing or because they are not ripe or have become moot.

### 1. <u>Hobbs Lacks Standing</u>

Standing is one aspect of justiciability which ensures that federal courts consider only those matters that present a live "case or controversy" under Article III. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559-60 (1992). For a plaintiff to have standing, he must show: (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) injury which is likely to be "redressed by a favorable decision." *Socialist Party v. Leahy,* 145 F.3d 1240, 1244 (11th Cir. 1998) (quoting *Lujan*, 504 U.S. at 560-61); *see also Petrano v. Polston,* 2015 WL 4004911, at *3 (N.D. Fla. Aug. 20, 2015). All three elements are an "irreducible constitutional minimum," and failure to show any one results in a failure to show standing. *Lujan*, 504 U.S. at 560.

An "injury in fact cannot be an abstract injury." *Koziara v. City of Casselberry,* 392 F.3d 1302, 1305 (11th Cir. 2004) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 101 (1983)). A plaintiff "must point to some type of cognizable harm, whether such harm is physical, economic, reputational, contractual, or even

aesthetic." *Id.* "But the injury in fact test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Lujan*, 504 U.S. at 563. "To be particularized, we mean that the injury must affect the plaintiff in a personal and individual way. . . . If the plaintiff is merely a concerned bystander, then an injury in fact has not occurred." *Koziara*, 392 F.3d at 1305 (quotations and citations omitted).

Hobbs lacks standing to challenge Question No. 26 because he answered "No" to the question. Because he answered "No," Hobbs cannot show that he suffered any "injury in fact" with respect to this question. *See ACLU v. Individual Members of the Indiana State Bd. of Law Exam'rs*, 2011 WL 4387470, note 7 (S.D. Ind. 2011) (hereafter, "*Indiana Board*") (answering "No" to bar application question meant applicant lacked standing to challenge that question).

Moreover, to the extent that Hobbs's claims are based on Question No. 25 and activity of the Board regarding his application for admission, Hobbs also lacks standing to seek injunctive relief because he withdrew his application for admission to The Florida Bar and the Board has ceased any activity relating to his application. *See Stoddard v. Supreme Court of Fla.,* Case No. 03-11662 (11th Cir. Oct. 24, 2013) (unpublished opinion) (copy attached as Exhibit "C").

In *Stoddard,* the plaintiff initially sought admission to The Florida Bar, but after undergoing investigation relating to, *inter alia,* mental health issues, he

12

withdrew his application. The Eleventh Circuit concluded that he lacked standing to challenge the actions of the Board under the ADA. *Id.* at 12-13 ("Stoddard admitted in his amended complaint that he did not have a bar application currently pending. . . . As Stoddard has no bar application pending, however, any injury to him requiring equitable relief is conjectural and hypothetical, not actual and imminent. We can only speculate as to whether he will resubmit his application and the final outcome.").

Although Hobbs alleges that he intends to reapply, it is speculative whether he will, in fact, reapply later. Hobbs also references various fees (he calls them "surcharges") and the possibility that the Board might, at some future date, propose that he be conditionally admitted. Yet, Hobbs has not incurred (or paid) any of the fees to which he refers, and he does not allege that the Board has proposed that he be subject to conditional admission. Thus, consistent with the Eleventh Circuit's holding and reasoning in *Stoddard*, Hobbs does not have standing to assert the claims in his complaint.[4]

### 2.   Hobbs's Claims Are Not Ripe

Similar to standing, "[t]he ripeness doctrine involves consideration of both

---

[4] Hobbs's situation is distinguishable from the plaintiff in *Ellen S. v. Florida Board of Bar Examiners*, 889 F. Supp. 1489 (S.D. Fla. 1994). In *Ellen S.*, the plaintiff applied for admission, but had not yet been denied, when she brought suit to challenge a question on the application. The Southern District held that denial of a license is not a prerequisite to a finding of discrimination. *See id.* at 1494. In the instant case, Hobbs has withdrawn his application, which *Stoddard* concludes results in a lack of standing to maintain an ADA lawsuit.

jurisdictional and prudential concerns." *Digital Properties, Inc. v. City of Plantation,*

121 F.3d 586, 589 (11th Cir. 1997). The Eleventh Circuit has described the ripeness

doctrine as follows:

> The ripeness doctrine prevent[s] the courts, through avoidance of
> premature adjudication, from entangling themselves in abstract
> disagreements . . . . To determine whether a claim is ripe, we must
> evaluate both the fitness of the issues for judicial decision and the
> hardship to the parties of withholding court consideration.

*Pittman v. Cole,* 267 F.3d 1269, 1278 (11th Cir. 2001) (quoting *Coalition for the*

*Abolition of Marijuana Prohibition v. City of Atlanta,* 219 F.3d 1301, 1315 (11th

Cir. 2000)). As guidance in considering and applying the "fitness" and "hardship"

prongs of the ripeness analysis, courts consider the following factors:

> (1) whether delayed review would cause hardship to the plaintiffs; (2)
> whether judicial intervention would inappropriately interfere with
> further administrative action; and (3) whether the courts would benefit
> from further factual development of the issues presented.

*Ohio Forestry Ass'n, Inc. v. Sierra Club,* 523 U.S. 726, 733 (1998).

Hobbs's claims are not ripe upon consideration of the second and third of the

*Ohio Forestry* factors—interference with administrative procedures and the need for

factual development. The Eleventh Circuit has held that claims are less likely to be

considered fit for adjudication when they venture beyond purely legal issues or when

they require "speculation about contingent future events." *Cheffer v. Reno,* 55 F.3d

1517, 1524 (11th Cir. 1995). In *Abbott Laboratories v. Garner,* 387 U.S. 136, 148-

49 (1967), the Court stated:

> [I]t is fair to say that [the] basic rationale [of the ripeness doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

Here, Hobbs withdrew his application. As a result, the process of full consideration of his application has not and will not occur, and this Court lacks any factual development concerning Hobbs's application. For instance, it is unknown whether Hobbs would have selected the investigative hearing or the Substance Use Disorder evaluation option; and it is also unknown what the outcome of either of those processes would have been. Moreover, notwithstanding Hobbs's allegation that he intends to reapply, it is still unclear whether he will in fact do so. And it is also unknown, if Hobbs were to reapply at some future date, whether the Board would require him, at that time, to have an evaluation. His circumstances could have changed. Hobbs asks this Court to speculate about how his application for admission might be considered, and therefore fails the ripeness test. *See, e.g., Stoddard,* Case No. 03-1162, Slip Op. at 13 ("This matter therefore is not ripe and Stoddard does not have standing to pursue this action."). Accordingly, Plaintiff's claims are not ripe for disposition by this Court.

### 3.    Hobbs's Claims are Moot

For similar reasons, Hobbs's claims would also appear to be moot, given that he has no pending application. "[A] case is moot when the issues presented are no

longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496 (1969). When the circumstances are such that "the court can no longer give the plaintiff meaningful relief, the case is moot" and should be dismissed. *Florida Ass'n of Rehab. Facilities, Inc. v. State of Fla., Dep't of Health & Rehab. Servs.,* 225 F.3d 1208, 1217 (11th Cir. 2000) (quoting *Jews for Jesus, Inc. v. Hillsborough Cty. Aviation Auth.*, 162 F.3d 627, 629 (11th Cir. 1998)). This case also does not fall within the "capable of repetition, yet evading review" exception. Unlike the situation present in those circumstances, *see Roe v Wade*, 410 U.S. 113, 125 (1973), there is no indication that Plaintiff's claims "evade review." Thus, any decision on the merits of a moot case or issue would be an impermissible advisory opinion. *See id.*

## B. <u>Eleventh Amendment Immunity</u>

All of Hobbs's claims are barred by Eleventh Amendment Immunity. Eleventh Amendment immunity "prohibits federal courts from entertaining suits brought by citizens against a state, including its agencies and departments" unless that immunity has been abrogated by Congress or waived by the state. *Uberoi v. Supreme Court of Fla.*, 819 F.3d 1311, 1313 (11th Cir. 2016). The immunity applies regardless of whether the relief sought is legal or equitable. *Id.* Because the Board is "an arm of [the Florida Supreme] Court," *In re Fla. Bd. of Bar Exam'rs*, 353 So. 2d 98, 100 (Fla. 1977), Eleventh Amendment immunity applies to claims against the

16

Board and its Executive Director. *See Stoddard v. Fla. Bd. of Bar Exam'rs*, 509 F. Supp. 2d 1117, 1123 (N.D. Fla. 2006) (dismissing bar applicant's §1983 claims against Board of Bar Examiners based on Eleventh Amendment immunity), *aff'd* 229 F. App'x 911 (11th Cir. 2007).[5]

### 1.  No Congressional Abrogation of Immunity under ADA

Plaintiff may argue that Congress abrogated Eleventh Amendment immunity regarding his claim under the ADA. Title II of the ADA validly abrogates state sovereign immunity for private causes of action against the States for "conduct that *actually* violates the Fourteenth Amendment." *United States v. Georgia*, 546 U.S. 151, 159 (2006) (emphasis in original). However, given the *factual* allegations in the complaint and the attached exhibits, Plaintiff cannot show an actual Fourteenth Amendment violation.

Although Plaintiff makes *conclusory* allegations that the Board's "policies, practices and procedures" lack a rational basis (ECF No. 1, at ¶¶98, 104), Plaintiff has not alleged specific facts to show an "actual violation" of the Fourteenth Amendment under the standard of *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009) ("Although … we must take all of the factual allegations in the complaint as true,

---

[5] *See also Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 610, 615 (6th Cir. 2003) (holding that Michigan Board of Law Examiners, as arm of the Michigan Supreme Court, was entitled to Eleventh Amendment immunity); *Lawrence v. Chabot*, 182 F. App'x 442, 2006 WL 1342316 (6th Cir. 2006) (same); *Cf. Kaimowitz v. The Fla. Bar*, 996 F.2d 1151, 1155 (11th Cir. 1993) (observing that "Eleventh Amendment prohibits actions against state courts and state bars").

we 'are not bound to accept as true a legal conclusion couched as a factual allegation,'" and "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief"). As further discussed below in connection with Plaintiff's failure to state a claim: (i) Questions No. 25 and No. 26 have a rational basis, as a matter of law, and are not facially unconstitutional and (ii) the facts set forth in the allegations and exhibits to the complaint show, as a matter of law, that the Board's decision to require Hobbs to either appear for an investigative hearing or undergo a Substance Use Disorder evaluation has a rational basis. Plaintiff's allegations merely reflect that he disagrees with the Board's decision in his case. Because Plaintiff does not allege any specific facts to state a viable Fourteenth Amendment claim, the Board's Eleventh Amendment immunity has not been abrogated in this case. *See Brewer v. Wisc. Bd. of Bar Exam'rs*, 270 F. App'x 418 (7th Cir. 2008), *cert. denied*, 555 U.S. 1003 (2008); *Guttman v. Khalsa*, 669 F.3d 1101 (10th Cir. 2012).

In *Brewer v. Wisconsin Board. of Bar Examiners*, a bar applicant who was receiving social security disability benefits for chronic depression and fatigue sued the board of bar examiners, alleging that the board's requirement that she undergo a psychological evaluation (and pay for it herself) violated her rights under the equal protection clause of the Fourteenth Amendment and Title II of the ADA. The court

in *Brewer* held that there was no equal protection violation because the board's requirement that the plaintiff undergo the evaluation "was rationally related to its interest in ensuring that only competent persons are admitted to practice law" in that state. *Id*. at *420-21. The court affirmed dismissal of plaintiff's ADA claim based on Eleventh Amendment immunity.

In *Guttman v. Khalsa*, a physician with a history of mental health issues challenged the revocation of his license to practice medicine as a violation of Title II of the ADA. 669 F.3d at 1106-07. He also claimed that the board's action violated the equal protection clause, alleging that the board was treating disabled individuals differently than non-disabled individuals. The court affirmed dismissal of the ADA claim based on Eleventh Amendment immunity, concluding that "a legitimate public safety concern -- the protection of patients from a mentally unstable physician – is an abundantly rational basis for treating Plaintiff differently from other similarly situated physicians." *Id.* at 1116. *See also Kirkpatrick v. Shaw*, 70 F.3d 100, 102-04 (11th Cir. 1995) (upholding facial validity of Florida's character and fitness requirements against Fourteenth Amendment due process and equal protection challenges); *Nichols v. Ala. State Bar*, 2015 WL 3823929 (N.D. Ala. 2015) (dismissing ADA claim based on Eleventh Amendment immunity where plaintiff alleged disability discrimination in connection with bar disciplinary proceeding).[6]

---

[6] The Eleventh Circuit affirmed dismissal of the complaint based on Eleventh Amendment

2. <u>No Waiver of Eleventh Amendment Immunity as to Rehabilitation Act Claim</u>

Plaintiff may argue that the Board has waived Eleventh Amendment immunity as to his Rehabilitation Act claim under 42 U.S.C. §2000d-7, based on his allegation that the Board receives "Federal Financial Assistance and Federal Grants in the amount of $9,509,801 for the Fiscal Year 2017 and 2018." (ECF No. 1, ⁋7). This allegation appears to have come from a pie chart available on the Supreme Court of Florida's website.[7] The chart reflects that the Florida state court system will receive "$9,509,801" for the "Federal Grants Trust Fund" for the Fiscal Year 2017 and 2018. However, the "Federal Grants Trust Fund," created by Section 947.045, Florida Statutes, relates to parole and supervised release for inmates, and is administered by the Florida Commission on Offender Review. The Board has not received any federal funding (including any funds from a federal grants trust fund) from 2016 to the present. (*See* Affidavit of Janey Stuart, Director of Finance and Human Resources for the Board, attached as Exhibit "D").[8] Accordingly, the Board has not waived Eleventh Amendment immunity.

---

immunity, however, the plaintiff had abandoned the ADA claim on appeal, thus that claim was not addressed on appeal. *Nichols*, 815 F.3d 726, 729 n. 1 (11th Cir. 2016).

[7] www.flcourts.org/core/fileparse.php/551/urlt/2FY17-18BudgetPieChartSCSByFundLessVetoes.pdf

[8] Because Eleventh Amendment immunity goes to subject matter jurisdiction, the Court may consider matters outside the pleadings when addressing the issue of Eleventh Amendment immunity. *See Baker v. Univ. Med. Ass'n, Inc.*, 2016 WL 7385811 (M.D. Fla. 2016) (granting Rule 12(b)(1) motion to dismiss FMLA claim based on Eleventh Amendment immunity, in reliance on matters outside the Plaintiff's complaint).

3.   *Ex Parte Young* is not applicable

Additionally, the exception to sovereign immunity established in *Ex Parte Young*, 209 U.S. 123 (1908), for claims seeking prospective injunctive relief also does not apply to Plaintiff's claims in this case. The *Ex Parte Young* exception only applies where the plaintiff seeks *prospective* injunctive relief against a state official in that person's official capacity. *See Uberoi,* 819 F.3d at 1314. In this case, Hobbs has already answered the questions at issue on the application, the Board has already made its determination relating to the need for an evaluation in his case and now Plaintiff has no pending application. Thus, because Plaintiff is actually seeking relief that is retroactive in nature, *Ex Parte Young* does not apply.

**C.** **Failure to State a Claim**

To state a claim for discrimination under Title II of the ADA, a plaintiff must allege facts to show: (1) that he is a "qualified individual with a disability;" (2) that he was "excluded from participation in or ... denied the benefits of the services, programs, or activities of a public entity" or otherwise "discriminated [against] by such entity;" (3) "by reason of such disability." 42 U.S.C. §12132; *Kornblau v. Dade Cty.*, 86 F.3d 193, 194 (11th Cir. 1996).

Unlike the ADA, the Rehabilitation Act also requires proof of "sole" causation and that the defendant receives federal funding. *See* 29 U.S.C. §794(a). Otherwise, "[d]iscrimination claims under the Rehabilitation Act are governed by

21

the same standards used in ADA cases." *J.A.M. v Nova Southeastern Univ.*, 646 F. App'x 921 (11th Cir. 2016).

Because the Board does not receive federal funding, Plaintiff cannot establish a prima facie case under the Rehabilitation Act. *See* 29 U.S.C. §794(a). Plaintiff also cannot state a claim for relief under the ADA.

It is well settled that "[t]he ADA does not prohibit reasonable inquiry concerning the mental disabilities or addictions of applicants for admission to the bar." *McCready v. Ill. Bd. of Admissions to Bar*, 1995 WL 29609, *7 (N.D. Ill. 1995). As stated by the court in *McCready*:

> The point of mental health inquiries by bar committees is not to "screen out" or "single out" individuals with mental disabilities or make it more difficult for them to become licensed attorneys. Whether an individual is qualified notwithstanding a disability or unqualified because of a disability depends on all of the facts of the case, including all pertinent facts about the disabling condition as well as all mitigating factors. The real point of the inquiry, and of all questions asked of applicants, is to develop a comprehensive picture of each individual, to compile a record of significant life events upon which informed judgments as to character and fitness can be based. Title II of the ADA places none of those facts off limits.

*Id*. at 6.

### 1.  Questions on Application

As a matter of law, the two questions at issue in this case do not violate the ADA. Question No. 25 is limited in temporal scope to a *five-year* period of time and is also limited in substantive scope to instances where the applicant has been

22

diagnosed with, suffered from, or been treated for *severe* mental illnesses, *i.e.*, a "severe thought disorder" or "severe mood disorder" or "substance abuse disorder," with specific examples given for each category. Question No. 26 is limited to "*current*" mental health conditions which do or could "impair or limit" the applicant's "ability to practice law in a competent and professional manner." The term, "currently" is defined to mean "recently enough so that the condition may have an ongoing impact on [the applicant's] functioning as a licensed attorney."

Courts addressing questions with wording similar to (and even broader than) Questions No. 25 and No. 26 have held that such questions are proper and do *not* violate the ADA. For instance, in *Indiana Board*, 2011 WL 4387470 (S.D. Ind. 2011), the court held that the following questions were proper and did not violate the ADA:

- Have you ever been diagnosed with or have you been treated for bi-polar disorder, schizophrenia, paranoia or any other psychotic disorder?

- Do you have any condition or impairment (including, but not limited to, substance abuse, alcohol abuse, or a mental, emotional, or nervous disorder) which in any way currently affects, or if untreated could affect, your ability to practice law in a competent and professional manner?

*Id.* at *2 and *5-11. The court reasoned that the Board had a "sound basis" to ask the first question (which is similar to Question No. 25, though broader in temporal scope) because it involved serious mental health illnesses that can recur throughout

a person's lifetime. The court approved the second question (similar to Question No. 26), even though it included the phrase, "if untreated could affect" -- a phrase to which Hobbs objects in the instant case -- based on the court's conclusion that this question (like Question No. 26) focused on present ability to practice law.[9]

In *Applicants v. Texas State Board of Law Examiners*, 1994 WL 923404 (W.D. Tex. 1994), the court held that the following questions were proper and did not violate the ADA:

- Within the last ten years, have you been diagnosed with or have you been treated for bipolar disorder, schizophrenia, paranoia, or any other psychotic disorder?

- Have you, since attaining the age of eighteen or within the last ten years, whichever period is shorter, been admitted to a hospital or other facility for the treatment of bipolar disorder, schizophrenia, paranoia, or any other psychotic disorder?

- If you answered 'Yes' to any part of this question, please provide details on a Supplemental Form, including date(s) of diagnosis or treatment, a description of the course of treatment, and a description of your present condition.

*Id.* at *1-9. In upholding these questions, the court rejected the argument made by Hobbs in this case -- that the questions were improper because they focused on *status*, rather than *conduct* -- concluding that the questions were *necessary* to the

---

[9] The court disapproved of another question as being overly broad and too open-ended, saying it would capture information related to less serious mental and emotional problems that might not raise competency issues. That question is much broader than the questions at issue in this case: "From the *age of 16 years to the present*, have you been diagnosed with or treated for *any* mental, emotional or nervous disorders?" *Id.* (emphasis added).

board's character and fitness inquiry. *Id.*

In *O'Brien v. Virginia Board of Bar Examiners*, 1998 WL 391019 (E.D. Va. 1998), the court denied the plaintiff's motion for a preliminary injunction based on the court's conclusion that the plaintiff had a low likelihood of success on her ADA challenge to the following question:

> • Within the past five years, have you been diagnosed with or have you been treated for any of the following: schizophrenia or any other psychotic disorder, delusional disorder, bipolar or manic depressive mood disorder, major depression, antisocial personality disorder, or any other condition which significantly impaired your behavior, judgment, understanding, capacity to recognize reality, or ability to function in school, work or other important life activities?

*Id*. The court also approved a question (broader than Question No. 25 or No. 26) which asked the following:

> • [W]hether the applicant is or has been chemically dependent upon drugs or alcohol, whether the applicant has any condition which affects his ability to perform the obligations of a practicing lawyer, and, if so, whether these limitations are reduced or ameliorated because he receives ongoing treatment.

*Id.* at *3.

Accordingly, to the extent that Plaintiff's ADA claim is based on a facial challenge to Questions No. 25 and No. 26, the complaint should be dismissed as a matter of law.[10]

---

[10] Although the court in *Ellen S. v. Florida Board of Bar Examiners*, 859 F. Supp. 1489 (S.D. Fla. 1994) denied a motion to dismiss an ADA challenge to a prior version of the mental health questions that were part of the application for admission at that time, the questions at issue have

2.  <u>Substance Use Disorder Evaluation / Investigative Hearing</u>

Similarly, Plaintiff's ADA claim based on the Board's decision that Hobbs either undergo a Substance Use Disorder evaluation or appear for an investigative hearing, as part of his character and fitness investigation, should also be dismissed as a matter of law – based on Plaintiff's allegations and the exhibits attached to Plaintiff's complaint.

Plaintiff's complaint and exhibits reflect that (i) Hobbs was arrested for DUI in 2006, (ii) he was arrested for DUI again in 2012, (iii) he had a severe depressive episode in 2015 when he used alcohol, (iv) he was diagnosed with Alcohol Use Disorder, mild, (v) he underwent psychotherapy from November of 2015 through April of 2016, (vi) he applied for admission to The Florida Bar within 6 months of conclusion of therapy and (vii) he equates his alcohol abuse with emotional distress. It is also apparent from Exhibit F to Plaintiff's complaint (ECF No. 1-6) that the Board had a reasonable basis for its decision based on the information received during the character and fitness investigation.

Plaintiff merely makes *conclusory* allegations that the Board's decision to require him to either appear for an investigatory hearing or undergo a Substance Use Disorder evaluation was not necessary, and thus violates the ADA. Plaintiff's

---

been substantially revised and narrowed since that time. Additionally, the arguments made by the Board in the instant case were not made in that case.

conclusory allegations are insufficient to state a claim for relief in this case. *See Ashcroft*, 556 U.S. at 678-679 ("[W]e 'are not bound to accept as true a legal conclusion couched as a factual allegation'). Moreover, "[a]lthough courts are directed to accept a plaintiff's allegations as true in ruling on a motion to dismiss, they are '*not bound* to accept the truth of general allegations in a complaint where they are contradicted by specific factual details in attached exhibits.'" *Turner v. Wells*, 2016 WL 4187486, *12 (S.D. Fla. 2016) (quoting *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 707 (11th Cir. 2016)).

Hobbs argues that further inquiry by the Board is unnecessary, and would violate the ADA, because he subjectively believes that he currently has his alcohol consumption under control and his treating physician wrote a letter in support of his admission (based in part on Hobbs's reports after the end of his treatment). (ECF No. 1-4). As courts have recognized, however, bar examiners need not accept an applicant's own subjective view: "a mere subjective inquiry into the applicant's belief about his or her own current ability to practice law … isn't much of an inquiry [because] [o]bviously, the vast majority of, if not all, bar applicants believe they are fit to practice law." *Indiana Board*, 2011 WL 4387470 at *10.

Accordingly, where a plaintiff's complaint and attached exhibits disclose facts that would provide a reasonable basis for further inquiry into an applicant's mental health or addiction history, a plaintiff's ADA claim may be dismissed on that basis,

as a matter of law. *See Stoddard*, 509 F. Supp. 2d at 1124-25 (dismissing ADA claim relating to Board's mental health inquiries during character and fitness investigation, even though plaintiff alleged that his mental health should not preclude his admission to the bar, because plaintiff had admitted that he had a lengthy history of significant mental health issues (and other matters), thus the Board could properly inquire into his background, "including his mental health"); *Hason v. Florida Bd. of Bar Exam'rs*, 4:06cv105-RH-WCS (N.D. Fla. 2006) (Order and Report and Recommendation attached as Exhibit "E") (dismissing plaintiff's ADA claim for failure to state claim for relief where the plaintiff alleged that the Board was unnecessarily inquiring into his mental health history and requiring copies of related records; court observed that "[i]t is plainly correct that state bar examiners may make a full inquiry into circumstances that may affect an applicant's character and fitness to practice law").

Plaintiff also alleges that the fee an applicant pays in connection with an investigative hearing or independent evaluation constitutes a "surcharge" that violates the ADA. This allegation also fails to state a claim for relief. First, Plaintiff fails to allege that he paid any fee. Second, and most significantly, the fee paid by applicants for an investigative hearing or evaluation is *not* paid by applicants to cover the costs of measures, such as the provision of auxiliary aids or program accessibility (e.g., a sign language interpreter), that are required to provide the applicant with the

nondiscriminatory treatment required by title II of the ADA. *Compare, e.g., Brown v. N.C. Div. of Motor Vehicles*, 166 F.3d 698, 709 (4th Cir. 1999) (stating that an example of an impermissible "surcharge" under the ADA is a courtroom that charges a deaf litigant for use of a sign language interpreter, as the ADA requires auxiliary aids to be provided without charge to accommodate persons with disabilities) *with Robishaw v. Providence Probate Court*, 206 F. Supp. 3d 723, 732 (D.R.I. 2016) (requiring disabled person to pay guardian ad litem and probate court fees did *not* violate the ADA as impermissible "surcharges" because these fees were not charges for receipt of a reasonable accommodation for the benefit of the disabled person).

Just as it is not a violation of the ADA for employers to require employees to incur the cost of fitness-for-duty medical examinations prior to returning to work, it is not a violation of the ADA for the Board to require an applicant to incur the cost of an investigative hearing or evaluation as part of the character and fitness investigation. *See Porter v. U.S. Alumoweld Co.*, 125 F.3d 243, 245 (4th Cir. 1997) (affirming dismissal of employee's ADA discrimination claim, after employee was terminated for refusing to complete an employer-required fitness-for-duty medical examination at his own expense); *see also Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 812 (6th Cir. 1999) (citing *Porter* with approval, the court noted, "Though we also need not decide today whether the district could require Sullivan to pay for the examinations, we note that the Fourth Circuit has upheld a dismissal where the

employee refused to pay for a fitness-for-return-to-duty exam after obtaining a general release to work from his own physician").

### 3. Conditional Admission

Plaintiff also alleges that the Board's conditional admission rules (Fla. Bar Admiss. R. 3-22.5(b) and 3-23.6(b)) violate the ADA. Inasmuch as Plaintiff does not allege that the Board has proposed conditional admission in Hobbs's case, Plaintiff cannot make out an *as-applied* challenge. Plaintiff also has not alleged facts to prevail on a *facial* challenge. To prevail on a facial challenge, Plaintiff must show that "no set of circumstances exists under which the [law] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Plaintiff has not, and cannot, allege facts to state a claim for relief.

### 4. Claim for Damages

Plaintiff seeks an award of compensatory damages under the Rehabilitation Act.[11] To the extent Plaintiff's damages claim is based on the fee or charge associated with an investigative hearing or evaluation, Plaintiff does *not* allege that he has paid any such fee. Thus, his claim for damages should be dismissed on this basis.

Moreover, to prevail on a claim for compensatory damages under the Act, "a plaintiff must show that a defendant violated his rights … with discriminatory

---

[11] Plaintiff does not seek an award of damages under the ADA. (ECF No. 1, pp. 22-23).

intent." *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014). This requires proof that the defendant either intentionally discriminated against plaintiff or was deliberately indifferent to his statutory rights. *Id.* Deliberate indifference "is an 'exacting standard,' … which requires showing more than gross negligence." *Id.* To show deliberate indifference, a plaintiff must prove that "the defendant '*knew* that harm to a federally protected right was substantially likely' and '*failed* to act on that likelihood.'" *Id.* (emphasis in original).

In the complaint, Plaintiff makes only conclusory allegations and legal argument on this issue. Plaintiff does not allege any actual *factual predicate* to show that the Board had actual knowledge that its actions were substantially likely to violate Hobbs's rights under the Rehabilitation Act and that the Board deliberately ignored the alleged violation that was occurring. Accordingly, Plaintiff's damages claim should be dismissed. *See Boynton v. City of Tallahassee*, 650 F. App'x 654, 658-59 (11th Cir. 2016) (affirming dismissal of claim for compensatory damages under Rule 12(b)(6)).

## IV.  <u>CONCLUSION</u>

Based on the foregoing, the Florida Board of Bar Examiners and its Executive Director, Michele A. Gavagni, respectfully request that Plaintiff's complaint be dismissed in its entirety.

Respectfully submitted,

/s/James J. Dean
James J. Dean
Florida Bar No.: 832121
Primary Email:   jdean@lawfla.com
Secondary Email:   tweiss@lawfla.com
Robert J. Telfer III
Florida Bar No.: 128694
Primary Email: rtelfer@lawfla.com
Secondary Email: clowell@lawfla.com
**MESSER CAPARELLO, P.A.**
2618 Centennial Place
Tallahassee, Florida 32308
Telephone: (850) 222-0720
*Attorneys for Board and Gavagni*

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

This motion with incorporated memorandum of law complies with the word

limitation of N.D. Fla. Loc. R. 7.1(f) and contains 7,833 words, excluding the parts

exempted by such rule.

/s/James J. Dean
James J. Dean

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished electronically using CM\ECF or email this 24th day of October, 2017, to the following:

Matthew W. Dietz, Esq.
Lisa C. Goodman, Esq.
Disability Independence Group, Inc.
2990 Southwest 35th Avenue
Miami, FL 33133
mdietz@justdigit.org
lgoodman@justdigit.org
aa@justdigit.org
*Attorneys for Plaintiff*

William H. Stafford III
Senior Assistant Attorney General
Office of the Attorney General
Civil Litigation
The Capitol - PL 01
Tallahassee, FL 32399-1050
William.Stafford@myfloridalegal.com
*Counsel for Defendant Florida Supreme Court*

s/ *James J. Dean*
James J. Dean