IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JULIUS HOBBS,

    Plaintiff,

v.        CASE NO. 4:17cv422-RH-CAS

FLORIDA BOARD OF BAR
EXAMINERS,

    Defendant.

_____/

**ORDER DENYING THE MOTION TO
ENFORCE THE SETTLEMENT AGREEMENT**

The plaintiff Julius Hobbs has moved to enforce the parties' settlement agreement in this lawsuit. A ruling denying the motion was announced on the record of a hearing on October 31, 2019. This order confirms and summarizes the ruling.

Mr. Hobbs asserted claims under the Americans with Disabilities Act against the Florida Board of Bar Examiners and its executive director in her official capacity. After entry of an order on motions to dismiss and for summary

judgment—an order that called into question but did not rule on the legality of some of the Board's practices—the parties entered into a settlement agreement.

Mr. Hobbs had withdrawn an earlier application for membership in the Florida Bar but asserted all along that he intended to submit a new application upon graduation from law school. The settlement agreement left Mr. Hobbs free to submit a new application and left the Board free to evaluate his fitness to practice in accordance with its standard procedures with only this change: the agreement required the Board to amend its standard practices for applicants who might have substance-use disorders. The agreement required the Board to pay a substantial fee to Mr. Hobbs's attorney.

Based on the settlement agreement, an order and judgment were entered that directed the parties to comply with the settlement agreement and otherwise dismissed the case. The order and judgment explicitly retained jurisdiction to enforce the order to comply with the settlement agreement.

Mr. Hobbs submitted a new application for membership in the Bar. The Board, acting through an attorney who participated in this litigation, wrote a letter dated June 26, 2019 suggesting Mr. Hobbs had not been candid in his deposition testimony and a declaration submitted in this lawsuit and in his answer to question 26 on the new application. Question 26 asked whether Mr. Hobbs had been treated for or had a recurrence of a substance-related disorder within the last five years

"that has impaired or could impair your ability to practice law." Mr. Hobbs answered no.

The suggestion that Mr. Hobbs had not been candid in his deposition testimony, declaration, or response to question 26 was not at all fair. The testimony related to the Board's repeated, unfounded assertion that Mr. Hobbs lacked standing to pursue the lawsuit—including on the ground that his claim of an intent to apply again for membership in the Florida Bar was too speculative to give him a litigable interest. Subsequent events have confirmed that if either side took unfounded positions on the standing issue, it was the Board, not Mr. Hobbs. But disagreements of this kind are standard fare in lawsuits; they hardly show a lack of candor. I did not refer the parties and attorneys on either side to the Florida Bar for evaluation of their candor.

The June 26 letter also raised an issue about Mr. Hobbs's alcohol use—a central issue in the litigation and a fair subject for inquiry by the Board, so long as Mr. Hobbs's assertion of an ADA claim is not held against him.

By letter dated July 2, 2019, the Board, this time acting through its executive director, not through the attorney who participated in this lawsuit, raised an additional issue: Mr. Hobbs apparently omitted a child-custody lawsuit and child-support obligation from an earlier application to the Bar. On July 15, Mr. Hobbs submitted an amendment to his application explaining the omission. He said that

by the time he submitted the application, he had primary custody of the child and no obligation to make child-support payments and simply overlooked these in submitting the application. The letter and amendment were professional in tone and, from all appearances, an unremarkable exchange of information of a kind that might occur in connection with a typical application for membership in the Bar.

    Mr. Hobbs did not respond in the same way to the June 26 letter from the Board's attorney. Mr. Hobbs, through his attorney, submitted a letter dated July 10 taking umbrage at being questioned, especially about alleged lack of candor in this lawsuit. The Board, through a different attorney, responded with a rather intemperate letter dated July 19, doubling down on the assertion of lack of candor in this lawsuit and urging Mr. Hobbs to exercise "great caution" before asserting his rights under the ADA. An observer familiar with the ADA's antiretaliation provision might urge a state agency to exercise great caution before admonishing a person with a history of or regarded as having a disability to exercise great caution before asserting his rights under the ADA. Imagine, for example, a large employer in the deep South in the mid 1960s telling an African American applicant to exercise great caution before asserting his rights under Title VII.

    On September 19, 2019, the Board issued a notice requiring Mr. Hobbs to appear for an investigative hearing before a Character and Fitness Panel. The notice raised issues related to prior DUI charges and alcohol use, omission of the

child-custody case and child-support obligation, omission of a mental-health provider, and alleged lack of candor in this lawsuit and the answer to question 26.

Rather than submitting a factual response and showing up at a hearing with hat in hand—usually the best strategy for an applicant facing inquiries—Mr. Hobbs has challenged the Board's position through a motion to enforce the settlement agreement. What Mr. Hobbs seeks by his motion to enforce is, in effect, an injunction precluding or at least limiting the Board's proceedings on his application.

The motion to enforce fails on three alternative grounds.

First, the settlement agreement does not speak to the Board's evaluation of Mr. Hobbs's application, with only one exception: the agreement in effect requires the Board to treat Mr. Hobbs consistently with the required changes to its standard substance-disorder procedures. The Board's June 26 and July 19 letters and the September 19 notice to appear do not indicate the Board intends to depart from the changed procedures. Mr. Hobbs says the letters and notice constitute retaliation against him for asserting his rights under the ADA and prosecuting this action, but it is only the ADA, not the settlement agreement itself, that prohibits retaliation.

Second, the record includes no evidence suggesting the Character and Fitness Committee or the Board, as distinguished from the attorneys who have corresponded with Mr. Hobbs's attorney, are likely to retaliate against Mr. Hobbs.

The litigating positions in the attorneys' letters—perhaps best characterized as those of either an overly zealous advocate or a disgruntled litigant—are not those of an objective analyst. The positions depart so far from a reasonable analysis of Mr. Hobbs's testimony and conduct in this action that it is unlikely the positions will be adopted by the Character and Fitness Panel or the Board. It is likely, instead, that cooler heads will prevail.

Third, an injunction against retaliating, without specific limitations on the Board's inquiry, would be a disfavored obey-the-law injunction. *See, e.g.*, *SEC v. Goble*, 682 F.3d 934, 949 (11th Cir. 2012). Such an injunction is unnecessary because retaliating is already against the law. The denial of an injunction does not preclude Mr. Hobbs from seeking retrospective relief, including an award of damages, if he later suffers retaliation. *See Renner v. Supreme Ct. of Fla.*, No. 4:17cv451-RH-CAS (N.D. Fla. Nov. 1, 2019) (holding an ADA retaliation claim for damages not barred by the Eleventh Amendment but rejecting the claim on the merits).

For these reasons and those set out on the record of the hearing on October 31, 2019,

IT IS ORDERED:

The motion to enforce the settlement agreement, ECF No. 110, is denied. No ruling is made on whether Mr. Hobbs has or has not suffered retaliation for asserting his rights under the Americans with Disabilities Act.

SO ORDERED on November 4, 2019.

s/Robert L. Hinkle<br>
United States District Judge